IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

ARVIN DALE ROCHELL                                                              PLAINTIFF

v.                                                                          No. 4:05CV268-P-A

CORRECTIONAL MEDICAL SERVICES, ET AL.                                          DEFENDANTS

**REPORT AND RECOMMENDATION**

On March 9, 2006, plaintiff Arvin Dale Rochell, an inmate in the custody of the Mississippi State Penitentiary with inmate number 83848, appeared before the undersigned for a hearing pursuant to *Spears v. McCotter,* 766 F.2d 179 (5th Cir. 1985), to determine whether there exists a justiciable basis for his claim filed pursuant to 42 U.S.C. § 1983. A plaintiff's claim shall be dismissed if "it lacks an arguable basis in law or fact, such as when a prisoner alleges the violation of a legal interest that does not exist." *Martin v. Scott*, 156 F.3d 578 (5th Cir. 1998)(citations omitted). For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this lawsuit.[1]

**Factual Allegations**

The plaintiff went to the Unit 30 Clinic at the Mississippi State Penitentiary during sick call on June 29, 2005, to have a tooth refilled or, if that proved impractical, to have it extracted. The dentist, Dr. James Woodson, examined the tooth and told the plaintiff that the tooth looked fine. After the plaintiff told Woodson that the tooth was sensitive to both heat and cold, Dr. Woodson agreed to work on it. After examining it further, Dr. Woodson asked the plaintiff if he wanted the tooth extracted. The plaintiff agreed to the extraction. After several failed attempts simply to pull the tooth, Dr. Woodson retrieved several instruments and performed oral surgery

---

[1]28 U.S.C. § 1915(g).

to remove the tooth. After the surgery, Dr. Woodson told the plaintiff that two root tips remained in his jaw – and they would probably work themselves out in a few months.

Nurse Graham handed the plaintiff a card of thirty 500 mg penicillin, a card of thirty 800 mg ibuprofen and some small gauze bandages. Dr. Woodson told the plaintiff that he needed a lay-in for a few days during healing – and wrote a lay-in with tray for five days. The plaintiff started shaking so hard while awaiting transport back to his unit that Officer Moore asked the plaintiff if he was all right. Dr. Woodson interjected that the plaintiff was not all right because the plaintiff's tooth "was one of the worst teeth [Dr. Woodson] had ever tried to extract," and that if the plaintiff ever needed more dental work, Dr. Woodson did not wish to treat him.

The plaintiff handed his medications to someone in line, stepped outside, and started spitting up large clots of blood. He then went to the restroom to inspect the surgical site in the mirror, where he discovered a one-inch cut in the underside of his tongue and an inch-and-a-half cut on the bottom of his mouth where the jaw meets the floor of the mouth. The plaintiff requested to see the dentist again to discuss the incisions that appeared to be in places other than the site of the extraction. The nurse told the plaintiff to keep pressing the gauze on the wound. At this point, the plaintiff became hostile and demanded to see the dentist, who then discussed the situation with the plaintiff.

Dr. Woodson told the plaintiff that it was common to get "a little nick" during oral surgery. The plaintiff showed Dr. Woodson the cuts, and Woodson told him that the cuts were not gushing blood and would heal in a little while. The plaintiff told Woodson that his mouth hurt him terribly, and Woodson told him, "You'll be all right." The plaintiff returned to the waiting area.

Once the plaintiff had returned to his cell, the local anesthetic wore off completely, and the plaintiff felt tremendous pain. He requested emergency medical treatment. Officer Hall, the corrections officer who viewed the plaintiff's mouth, sent the plaintiff to her superior, Lt. Davenport, who then sent the plaintiff to see a licensed practical nurse, Nurse Hill. Nurse Hill called the prison hospital, but the person at the hospital said the plaintiff must be treated by the same dentist who performed the procedure earlier. Upon hearing this, Lt. Davenport said, "This don't make no damned sense," and called the hospital herself, where she received the same answer Nurse Hill had earlier: Dr. Woodson was the only one permitted to treat the plaintiff for complications arising out of the tooth extraction. Officer Hall called the dentist's office; she was told that Dr. Woodson could not do anything more for the plaintiff. About 6:00 p.m., the plaintiff again requested that Nurse Hill call Dr. Woodson; the plaintiff was in pain, and his mouth was still bleeding. Dr. Woodson refused to see the plaintiff.

The plaintiff's mouth continued to hurt and bleed to some degree, and his tongue swelled to the point that he could hardly eat. After several informal requests for medical attention, the plaintiff filed a grievance with the Administrative Remedy Program and submitted a sick call request form.

The plaintiff finally returned to the Unit 30 Clinic July 6, 2005, for a follow-up visit with Dr. Woodson. The plaintiff told the dentist that his mouth was still swollen and painful. Dr. Woodson examined the extraction site and told the plaintiff "it's doing fine." Woodson then pressed in the plaintiff's mouth to examine his mouth further, and it hurt so much that the plaintiff got out of the chair. The plaintiff told Dr. Woodson that he had used a Q-tip to remove food from the extraction site, and Dr. Woodson told the plaintiff not to put *anything*, including

his tongue, into the wound. Woodson said, "The worse it looks, the better off it is. Do not clean the hole for any reason." When the plaintiff inquired about bone visible in the extraction site, Dr. Woodson said, "That's your jaw bone, do you want me to extract it, too? It's normal to see jaw bone after oral surgery." When the plaintiff asked for more pain medication, Dr. Woodson handed the plaintiff another card of 30 Ibuprofen 800 mg tablets. The plaintiff asked how long the powerful pain would continue; Dr. Woodson replied, "How long would your ankle hurt after major surgery?" When Dr. Woodson thought the plaintiff was out of earshot, he told his nurse, "Rochell just wants something to complain about; he's not hurting that bad."

That night, Dr. Santos saw the plaintiff regarding his June 30, 2005, sick call request. Dr. Santos agreed that the extra cuts were unnecessary; he added that the wounds were healing fine, although there might be some infection. Since that time the plaintiff has not sought or received treatment for the site of extraction. All of the wounds eventually healed, but the plaintiff alleges that there is still a tender knot the size of a peanut where the dentist cut him.

## Discussion

This case presents the court with a claim that prison officials provided inadequate medical care for the extraction of the plaintiff's tooth and during the plaintiff's recovery after the extraction and that failure to do so constituted deliberate indifference to the plaintiff's serious medical or dental needs. The plaintiff argues that he should have been referred to a specialist, an oral surgeon, to have his tooth extracted. He also argues that he did not give informed consent to the extraction. He argues further that the dentist, Dr. Woodson, botched the extraction of the plaintiff's tooth by making incisions or cuts where they were not necessary. Finally, the plaintiff argues that he should have been placed on a soft food diet during his period of recovery after the

-4-

tooth extraction. As discussed below, all of the plaintiff's claims are without merit and should be dismissed.

## Denial of Medical Treatment

In order to prevail on an Eighth Amendment claim for denial of medical care, a plaintiff must allege facts which demonstrate "deliberate indifference to the serious medical needs of prisoners [which] constitutes 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment . . . whether the indifference is manifested by prison doctors or prison guards in intentionally denying or delaying access to medical care . . . ." *Estelle v. Gamble*, 429 U.S. 97, 104-105, 50 L. Ed. 2d 251, 260 (1976); *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992). The test for establishing deliberate indifference is one of "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Under this standard, a state actor may not be held liable under 42 U.S.C. § 1983 unless plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 838. Only in exceptional circumstances may knowledge of substantial risk of serious harm be inferred by a court from the obviousness of the substantial risk. *Id*. Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662 (1986), *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668 (1986). A prisoner's mere disagreement with medical treatment provided by prison officials does not state a claim against the prison for violation of the Eighth Amendment by deliberate indifference to his serious medical needs. *Gibbs v. Grimmette*, 254 F.3d 545 (5th Cir.2001), *Norton v. Dimazana*, 122 F.3d

286, 292 (5th Cir. 1997).

The plaintiff has not stated a constitutional claim for deliberate indifference to his serious medical or dental needs. His tooth was giving him trouble. He went to the prison dentist, who decided that filling the tooth was impractical and asked the plaintiff if he wanted the tooth to be extracted. The plaintiff agreed to the extraction. The procedure was difficult but ultimately successful. A dentist is competent to perform a tooth extraction. The plaintiff was given pain medication and antibiotic as follow-up treatment. He submitted requests for examination and treatment by medical personnel, and he was examined and treated every time he submitted a proper request. The plaintiff complains that the defendants did not put him on a soft food diet, but he acknowledges that he never requested such a diet. The plaintiff has never consulted or sought treatment from anyone at Parchman about the peanut-sized tender spot he claims remains in his mouth.

The court does not doubt that the plaintiff suffered pain after his tooth was extracted. The constitution does not, however, guarantee pain-free medical treatment, and the defendants provided the plaintiff with medication for his pain. While the plaintiff might have preferred stronger medication, his mere disagreement with his medical treatment does not state a constitutional claim. Indeed, prison doctors are understandably hesitant to prescribe powerful narcotics to prisoners except when absolutely necessary. Finally, a claim regarding lack of informed consent is one of medical negligence, not deliberate indifference, and negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662 (1986), *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668 (1986). For these reasons, the undersigned respectfully recommends that this case be dismissed with

prejudice for failure to state a claim upon which relief could be granted.

## Handling of Objections, Acknowledgment of Receipt

The court refers the parties to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for the appropriate procedure in the event any party desires to file objections to these findings and recommendations. Objections are required to be in writing and must be filed within ten (10) days of this date, and "a party's failure to file written objections to the findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except on grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court . . . ." *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*)(citations omitted); *see also United States v. Carrillo-Morales*, 27 F.3d 1054, 1061-62 (5th Cir. 1994), *cert. denied*, 513 U.S. 1178, 115 S.Ct. 1163, 130 L. Ed. 1119 (1995).

The plaintiff is directed to acknowledge receipt of this report and recommendation by signing the enclosed acknowledgment form and returning it to the clerk of the court within ten (10) days of this date. The plaintiff is warned that failure to comply with the requirements of this paragraph may lead to dismissal of this lawsuit under Fed. R. Civ. P. 41(b) for failure to prosecute the claim and for failure to comply with an order of the court.

Respectfully submitted this 10th day of April, 2006.

/s/ S. Allan Alexander
UNITED STATES MAGISTRATE JUDGE